UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES JONES, | ) | |
| | ) | |
| Plaintiff, | ) | 16 C 8522 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| STATE OF ILLINOIS DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Charles Jones sued his former employer, the Illinois Department of Children and Family Services ("DCFS"), and several DCFS employees under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. Doc. 10. After amending the complaint three times and dropping the individual defendants, Docs. 42, 50, 59-60, 68-69, Jones filed a fourth amended complaint, which alleges failure to accommodate in violation of the ADA and Rehabilitation Act, as well as harassment, retaliation, and discrimination on the basis of disability in violation of the ADA and Rehabilitation Act, on the basis of age in violation of the ADEA, and on the basis of race, color, and national origin in violation of 42 U.S.C. § 1983. Doc. 91. DCFS successfully moved to dismiss the ADEA and § 1983 claims, Docs. 92, 102, and now moves for summary judgment on the ADA claims. Doc. 124. Because the ADA and Rehabilitation Act are "coextensive" apart from "some minor differences not relevant here," *CTL ex rel. Trebatoski v. Ashland Sch. Dist.*, 743 F.3d 524, 528 (7th Cir. 2014), the court will construe the motion as addressing the Rehabilitation Act claims as well. The motion is granted.

## Background

Consistent with Local Rule 56.1, DCFS filed a Local Rule 56.1(a)(3) statement of undisputed facts along with its summary judgment motion. Doc. 126. Each factual assertion in the Local Rule 56.1(a)(3) statement cites evidentiary material in the record and is supported by the cited material. *See* N.D. Ill. L.R. 56.1(a) ("The statement referred to in (3) shall consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph."). If Jones wished to oppose summary judgment, Local Rule 56.1(b) required him to file: "(1) any opposing affidavits and other materials referred to in Fed. R. Civ. P. 56(e); (2) a supporting memorandum of law; and (3) a concise response to the movant's [Local Rule 56.1(a)(3)] statement." N.D. Ill. L.R. 56.1(b). Jones instead filed documents that he called "Motion for Summary Judgment" and "LR56.1 Motion." Docs. 130, 133. The court denied both motions to the extent they sought summary judgment in Jones's favor, but construes the filings as responses to DCFS's summary judgment motion. Docs. 132, 135.

Unfortunately, Jones's "LR 56.1 Motion" is not a valid Local Rule 56.1(b)(3)(B) response. Local Rule 56.1(b)(3)(B) required Jones to file a "concise response to [DCFS's Local Rule 56.1(a)(3)] statement that … contain[ed] … a response to each numbered paragraph in [DCFS's] statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." N.D. Ill. L.R. 56.1(b)(3)(B). Despite having been served with a Local Rule 56.2 Notice, Doc. 127, which explained in detail the requirements of Local Rule 56.1, Jones did not respond in the manner required by Local Rule 56.1(b)(3)(B). Jones's "LR 56.1 Motion" contains numbered paragraphs, but those paragraphs do not sync up with the paragraphs in DCFS's Local Rule 56.1(a)(3)

statement. Doc. 133. Nor does the "LR 56.1 Motion" support its factual assertions with "specific references" to the record; instead, it refers generally "to the record in this action." *Id*. at 1. Accordingly, Jones's "LR 56.1 Motion" comes nowhere close to qualifying as a Local Rule 56.1(b)(3)(B) response. *See Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 817-18 (7th Cir. 2004) ("[W]here a non-moving party denies a factual allegation by the party moving for summary judgment, that denial must include a specific reference to the affidavit or other part of the record that supports such a denial. Citations to an entire transcript of a deposition or to a lengthy exhibit are not specific and are, accordingly, inappropriate."). The same is true of the "Motion for Summary Judgment," Doc. 130, which suffers from the same defects.

The Seventh Circuit "has consistently upheld district judges' discretion to require strict compliance with Local Rule 56.1." *Flint v. City of Belvidere*, 791 F.3d 764, 767 (7th Cir. 2015) (citing cases); *see also Stevo v. Frasor*, 662 F.3d 880, 886-87 (7th Cir. 2011) ("Because of the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and law, we have repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings."). Here, the problem is not that Jones failed to *strictly* comply with Local Rule 56.1(b)(3)(B); rather, it is that he did not comply *at all*. This court need not and will not attempt to map the factual assertions in Jones's "LR 56.1 Motion" and "Motion for Summary Judgment" onto the factual assertions in DCFS's Local Rule 56.1(a)(3) statement to determine whether he has adduced a genuine dispute of material fact; that is the function of a properly constructed Local Rule 56.1(b)(3)(B) response. *See Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 219 (7th Cir. 2015) ("The purpose of Rule 56.1 is to have the litigants present to the district court a clear, concise list of material facts that are central to the summary judgment determination. It is the

3

litigants' duty to clearly identify material facts in dispute and provide the admissible evidence that tends to prove or disprove the proffered fact. A litigant who denies a material fact is required to provide the admissible evidence that supports his denial in a clear, concise, and obvious fashion, for quick reference of the court. The district court did not abuse its discretion in finding [the plaintiff] failed to comply with Rule 56.1 requirements."); *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) ("Because of the important function local rules like Rule 56.1 serve in organizing the evidence and identifying disputed facts, we have consistently upheld the district court's discretion to require strict compliance with those rules."); *Olivet Baptist Church v. Church Mut. Ins. Co.*, 2016 WL 772787, at *1-2 (N.D. Ill. Feb. 29, 2016) (deeming admitted the facts asserted in the defendant's Local Rule 56.1(a)(3) statement where the plaintiff did not file a Local Rule 56.1(b)(3)(B) response and instead purported to submit a Local Rule 56.1(b)(3)(C) statement as a "global[ ]" response to the factual assertions in the Local Rule 56.1(a)(3) statement), *aff'd*, 672 F. App'x 607 (7th Cir. 2017).

Jones's status as a pro se litigant does not excuse his failure to comply with Local Rule 56.1(b)(3)(B). *See McNeil v. United States*, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Coleman v. Goodwill Indus. of Se. Wis., Inc.*, 423 F. App'x 642, 643 (7th Cir. 2011) ("Though courts are solicitous of pro se litigants, they may nonetheless require strict compliance with local rules."); *Wilson v. Kautex, Inc.*, 371 F. App'x 663, 664 (7th Cir. 2010) ("[S]trictly enforcing Local Rule 56.1 was well within the district court's discretion, even though [the plaintiff] is a pro se litigant.") (citations omitted); *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006) ("[E]ven pro se litigants must follow rules of civil procedure."). Accordingly, given Jones's failure to comply with Local Rule

56.1(b)(3)(B), the facts asserted in DCFS's Local Rule 56.1(a)(3) statement are deemed admitted. *See* N.D. Ill. L.R. 56.1(b)(3)(C) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."); *Olivet Baptist Church v. Church Mut. Ins. Co.*, 672 F. App'x 607, 607 (7th Cir. 2017) ("The district court treated most of the [defendant's] factual submissions as unopposed, because the [plaintiff] failed to contest them in the form required by Local Rule 56.1(b). We have held that the district court is entitled to enforce that rule in precisely the way it enforced the rule in this litigation."); *Curtis*, 807 F.3d at 218 ("When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion."); *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880, 884 (7th Cir. 2012); *Parra v. Neal*, 614 F.3d 635, 636 (7th Cir. 2010); *Rao v. BP Prods. N. Am., Inc.*, 589 F.3d 389, 393 (7th Cir. 2009).

Before proceeding, the court notes that Jones's "LR 56.1 Motion" and "Motion for Summary Judgment" cannot be considered Local Rule 56.1(b)(3)(C) statements of additional facts. Like Local Rule 56.1(b)(3)(B), Local Rule 56.1(b)(3)(C) requires "references to the affidavits, parts of the record, and other supporting materials relied upon." N.D. Ill. L.R. 56.1(b)(3)(C). As noted, Jones's "LR 56.1 Motion" and "Motion for Summary Judgment" do not cite specific record evidence to support their factual assertions, and so those assertions are not properly part of the summary judgment record. *See Friend v. Valley View Cmty. Unit Sch. Dist. 365U*, 789 F.3d 707, 710 (7th Cir. 2015) ("[T]he district court did not abuse its discretion in disregarding the facts contained in [the plaintiff's] statement of additional facts that were not supported by proper citations to the record.").

The court is mindful that "a nonmovant's failure to respond to a summary judgment motion, or failure to comply with Local Rule 56.1, does not … automatically result in judgment for the movant. [The movant] must still demonstrate that it is entitled to judgment as a matter of law." *Keeton*, 667 F.3d at 884 (citations and internal quotation marks omitted). The court therefore will recite the facts set forth in DCFS's Local Rule 56.1(a)(3) statement, viewing the facts and inferences therefrom as favorably to Jones as the record and Local Rule 56.1 allow. *See Canen v. Chapman*, 847 F.3d 407, 412 (7th Cir. 2017). The court then will determine whether, on those facts, DCFS is entitled to summary judgment. At this juncture, the court must assume the truth of those facts, but does not vouch for them. *See Arroyo v. Volvo Grp. N. Am., LLC*, 805 F.3d 278, 281 (7th Cir. 2015).

DCFS hired Jones as a full-time office associate in 1994. Doc. 126 at ¶ 5. He was diagnosed with a hearing disability in early 2011. *Id*. at ¶ 47. In December 2013, Jones transferred from DCFS's Deerfield office to its Chicago office, where he was assigned to work in a cubicle. *Id*. at ¶¶ 6, 51. On three occasions during his first week, one of his supervisors, Deborah Wilson Gordon, walked into his cubicle and hit him with her body while handing papers to someone in an adjacent cubicle. *Id*. at ¶ 39. After the third time, Jones complained, and Wilson Gordon did not enter his cubicle again. *Id*. at ¶ 40. The incident reminded Jones that he was entitled to a reasonable accommodation for his hearing disability, and he asked Wilson Gordon to move him to "a room." *Id*. at ¶ 52; Doc. 126-2 at 21.

On February 6, 2014, Jones submitted a written request for a "room with a network printer" and "less noise." Doc. 126 at ¶ 53. One of his supervisors, Steven Minter, and the Deputy Director of the Office of Affirmative Action walked around the office with Jones to find an appropriate workspace. *Id*. at ¶¶ 10, 54. Jones agreed to work in a hallway away from

printers and fax machines. *Id*. at ¶ 55; Doc. 126-2 at 21. About a week later, Jones complained that other employees were disturbing him in his new workspace by walking into and out of a nearby file room and by accusing him of not working. Doc. 126 at ¶ 56. Minter ordered other employees to avoid the file room if possible unless Jones was on his lunch break. *Id*. at ¶ 57; Doc. 126-4 at ¶ 9. Within about a week, Jones was moved to an office. Doc. 126 at ¶ 59.

In the meantime, Jones's supervisors had begun to express concerns about his work performance. Jones expected that his new job would involve opening new cases. *Id*. at ¶ 38. Instead, Jones was assigned to process 906 forms, which document changes in placement for foster children under DCFS's care, enabling the agency to locate each child and to pay foster parents, group homes, and other service providers. *Id*. at ¶¶ 15-16, 38. The average office associate completed approximately one hundred seventy-five 906 forms each day. *Id*. at ¶ 19. Jones completed an average of only about twenty forms per day. *Id*. at ¶ 20.

Jones's performance did not meet DCFS's competence and efficiency standards. *Id*. at ¶ 18. As noted in a January 17, 2014 letter from Minter to Jones, Minter counselled Jones about the importance of 906 forms and warned that he could be disciplined if his performance did not improve. *Id*. at ¶ 22. On December 8, 2014, Jones was suspended for five days for, among other things, failing to complete 906 forms in a timely and accurate manner. *Id*. at ¶ 23. Jones's annual performance evaluation for 2014 reflected that he had failed to meet eight of nine listed objectives, including processing 906 forms efficiently and correctly. *Id*. at ¶¶ 34-35; Doc. 126-12 at 3, 6.

In January 2015, Jones missed two days of work without prior approval, an offense for which he later was reprimanded. Doc. 126 at ¶ 30. He was suspended for ten days on February 27, 2015 for failing to promptly and correctly enter 906 forms. *Id*. at ¶ 24. Jones blamed his

performance problems on a malfunctioning computer, but both Minter and the DCFS Information Technology Helpdesk checked Jones's computer and found no evidence of a malfunction. *Id*. at ¶ 26. Minter concluded that Jones was "making up an excuse for his poor job performance." *Id*. at ¶ 27. On April 15, 2015, Minter arranged a special 906 form training session for Jones, but Jones did not attend. *Id*. at ¶¶ 28-29.

On May 11, 2015, a union steward told Minter that Jones had made a threatening statement about Minter. *Id*. at ¶ 33; Doc. 126-4 at ¶ 29. Jones was immediately placed on paid administrative leave and ordered not to enter DCFS property, to remain available during working hours, and not to leave his home during working hours without prior approval. Doc. 126 at ¶ 31. Jones violated those conditions the next day. *Id*. at ¶ 32.

On May 22, 2015, Jones filed a charge of discrimination with the Illinois Department of Human Rights ("IDHR") and the Equal Employment Opportunity Commission ("EEOC"), claiming that he was placed on administrative leave because of his disability and in retaliation for filing previous charges. *Id*. at ¶ 66; 126-18 at 2.

DCFS terminated Jones on July 21, 2015. Doc. 126 at ¶ 33. At that time, Jones was not meeting expectations. *Id*. at ¶ 36. A Statement of Charges documenting the termination stated that Jones was discharged for threatening Minter, violating the conditions of his administrative leave, skipping the 906 form training in April, and failing to enter 906 forms in a timely manner. *Id*. at ¶ 33. DCFS's Employee Handbook, receipt of which Jones acknowledged in writing, prohibited taking "absence[s] without leave," "negligent performance of assigned duties," and "inattention of duty or neglect of responsibilities." *Id*. at ¶¶ 63, 65. The Handbook also set forth a "Zero Tolerance" policy for threats of violence exchanged between employees. *Id*. at ¶ 64; Doc. 126-17 at 2.

Jones alleges that he has been harassed, but he does not know why Wilson Gordon or Minter harassed him. Doc. 126 at ¶¶ 38-39, 41. Jones also believes that he was retaliated against because he requested an office. *Id*. at ¶ 44. Jones speculated at his deposition that he was fired because DCFS wanted to obtain a grant using something he produced, variously described as a "book," an "art book," a "program," and "DVDs." *Id*. at ¶ 42; Doc. 126-2 at 23.

**Discussion**

As noted, "[o]ther than some minor differences not relevant here," the ADA and the Rehabilitation Act "are coextensive." *CTL ex rel. Trebatoski*, 743 F.3d at 528; *see also Discovery House, Inc. v. Consol. City of Indianapolis*, 319 F.3d 277, 279 (7th Cir. 2003) ("[T]he ADA and the [Rehabilitation Act] … run along the same path and can be treated in the same way… ."). The court will therefore refer to the ADA and the Rehabilitation Act together as the ADA. "The ADA imposes liability on employers who discriminate in the terms and conditions of a qualified individual's employment on the basis of a disability and requires that employers make reasonable accommodations for qualified individuals' disabilities." *Harris v. Allen Cnty. Bd. of Comm'rs*, 890 F.3d 680, 683 (7th Cir. 2018) (citing 42 U.S.C. § 12112(a), (b)(5)(A)). "The ADA also prohibits retaliating against individuals (qualified or not) who have engaged in activities protected by the ADA, such as filing a Charge of Discrimination with the EEOC or requesting reasonable accommodations." *Rowlands v. United Parcel Serv.–Ft. Wayne*, 901 F.3d 792, 798 (7th Cir. 2018). Jones raises four ADA claims, which are addressed in turn.

First, Jones claims that DCFS failed to accommodate his disability. Doc. 91 at ¶ 12. "To establish a failure to accommodate claim[, Jones] must show that: (1) [he] is both qualified and has a disability; (2) [DCFS] was aware of [his] disability; and (3) [DCFS] failed to accommodate

9

[his] disability." *Rowlands*, 901 F.3d at 798. DCFS is entitled to summary judgment because the record indisputably shows that it accommodated Jones's disability. Doc. 125 at 9.

Jones requested "a room" as a workspace in December 2013 and followed up with a written request in February 2014. Doc. 126 at ¶¶ 52-53; Doc. 126-2 at 21. Having received these requests, DCFS was required to "meet [Jones] half way and engage in a flexible, interactive process to identify the necessary accommodations." *Reeves ex rel. Reeves v. Jewel Food Stores, Inc.*, 759 F.3d 698, 701 (7th Cir. 2014) (internal quotation marks omitted). DCFS did exactly that, first by identifying a hallway space where Jones agreed to work and then, when that space proved insufficient, by promptly providing Jones with an office. Doc. 126 at ¶¶ 54-57, 59. True, the hallway space was not a "room," but the ADA does not require employers to provide the precise accommodation requested, *see Cloe v. City of Indianapolis*, 712 F.3d 1171, 1179 (7th Cir. 2013) ("It is the employer's prerogative to choose a reasonable accommodation; an employer is not required to provide the particular accommodation that an employee requests.") (internal quotation marks and alteration omitted), *overruled on other grounds by Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 764 (7th Cir. 2016), and in any event, DCFS provided Jones a room shortly thereafter. And while there was some delay (about two months, Doc. 126 at ¶¶ 52, 54-59) between Jones's first request and his first accommodation, that delay was not unreasonably long. *See Cloe*, 712 F.3d at 1177-79 (holding that an employer reasonably accommodated an employee even though the employer took some three months to provide any accommodation and an additional two months to provide the employee's requested accommodation).

Second, Jones claims that DCFS discriminated against him due to his disability. Doc. 91 at ¶¶ 9, 12-13. "In order to defeat summary judgment on [a] disability discrimination claim, [a

plaintiff] must point to evidence capable of establishing that (1) [he] is a person with a disability within the meaning of the ADA … ; (2) [he] is qualified to perform the essential functions of [his] job with or without a reasonable accommodation; and (3) [he] suffered from an adverse employment decision as a result of [his] disability." *Guzman v. Brown Cnty.*, 884 F.3d 633, 641 (7th Cir. 2018). Under the framework set forth in *Ortiz v. Werner Enterprises, Inc.*, *supra*, an ADA plaintiff must present evidence that, considered as a whole, would allow a reasonable juror to conclude that he suffered discrimination due to a perceived or actual disability. *See Monroe v. Ind. Dep't of Transp.*, 871 F.3d 495, 504 (7th Cir. 2017); *Knapp v. Evgeros, Inc.*, 205 F. Supp. 3d 946, 956 (N.D. Ill. 2016).

Jones's discrimination claim founders because he cannot "show a genuine issue of material fact exists regarding whether his disability was the 'but for' reason" for any adverse employment action. *Monroe*, 871 F.3d at 504 (quoting *Serwatka v. Rockwell Automation, Inc.*, 591 F.3d 957, 962 (7th Cir. 2010)). By failing to respond to DCFS's Local Rule 56.1(a)(3) statement, Jones admitted that "Minter instituted progressive discipline against" him "as a result of [his] negligent performance of his assigned duties and the neglect of his responsibilities," not because of his disability. Doc. 126 at ¶ 21. Jones also admitted that he was discharged for the non-discriminatory reasons articulated in the Statement of Charges letter. *Id*. at ¶ 33. Moreover, at his deposition, Jones speculated that he was fired because DCFS wanted to use something that he produced to obtain grant money—not because of his disability. *Id*. at ¶ 42.

Even setting aside Jones's admissions, DCFS presents undisputed evidence that he failed to meet expectations beginning in January 2014, about a month after his start date, and continuing until his termination. Doc. 125 at 6; Doc. 126 at ¶¶ 22, 33-34, 36. Jones processed 906 forms inefficiently and inaccurately, and thus did not meet DCFS's production standards.

Doc. 126 at ¶¶ 18-20, 22-24, 34. Those problems are legitimate grounds for discipline, particularly given that 906 forms serve the vital functions of tracking the locations of foster children and ensuring that their caretakers are paid. *Id*. at ¶¶ 15-16; *see Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 863 (7th Cir. 2005) ("[T]he ADA provides no protection for a disabled worker who, … for reasons unrelated to his disability[,] performs in such an unsatisfactory manner … that he fails to keep up with the production pace and abide by the quality-control standards that [his employer] has established as a benchmark for all its employees.") (emphasis omitted); *Whitfield v. Tennessee*, 639 F.3d 253, 261 (6th Cir. 2011) (holding that "there [was] no genuine issue of material fact as to whether [an administrative professional's] termination was due to her poor performance" where she made repeated errors in transcribing information). Jones's unexcused absences, threatening statement, and refusal to abide by the requirements of his administrative leave further justified discipline. Doc. 126 at ¶¶ 30-33; *see Anders v. Waste Mgmt. of Wis.*, 463 F.3d 670, 676 (7th Cir. 2006) ("It cannot be disputed that [the plaintiff's] behavior … failed to meet [the defendant's] 'legitimate expectations' as established by its Code of Conduct and Workplace Violence policy … [due to] his aggressive and violent conduct."); *Hammel*, 407 F.3d at 863 ("[The ADA] does [not] protect an employee who is insubordinate and refuses to obey and accept direct orders from his supervisors … ."). On this record, there is no question that Jones was disciplined and ultimately discharged for failing to meet legitimate employment expectations, not due to his disability.

Jones's third claim, that DCFS retaliated against him for engaging in protected activity, Doc. 91 at ¶ 12, fails for similar reasons. To survive summary judgment on an ADA retaliation claim, Jones "must identify evidence showing that (1) [he] engaged in a statutorily protected activity; (2) [he] suffered an adverse employment action; and (3) there is a causal connection

between the two." *Guzman*, 884 F.3d at 642. Jones's administrative charge states that DCFS retaliated against him for filing previous discrimination charges, Doc. 126 at ¶ 66, and Jones testified at his deposition that he was retaliated against for requesting a room as a workspace to accommodate his disability, *id*. at ¶ 44. But there is no properly presented record evidence that would allow a reasonable jury to find that either form of protected activity caused DCFS to discipline or discharge him. Doc. 125 at 10-11. To the contrary, Jones admits—and the record amply supports—that his performance problems motivated his discipline and termination. Doc. 126 at ¶¶ 21, 33; *see Lauth v. Covance, Inc.*, 863 F.3d 708, 717 (7th Cir. 2017) ("[The plaintiff] has not cited any evidence, other than his own speculation, that might indicate that [his employer] used the litany of complaints and the documented history of his communication issues as a cover for its retaliatory motive. That speculation is insufficient to raise a question of fact, particularly in light of [the employer's] consistent, longstanding, and progressive concerns about his behavior."); *Ferrill v. Oak Creek–Franklin Joint Sch. Dist.*, 860 F.3d 494, 501 (7th Cir. 2017) (affirming summary judgment in a retaliation case where the adverse employment action indisputably was taken due to the plaintiff's "persistent resistance to improving her performance, which spanned the entirety of her two-year tenure"); *Boss v. Castro*, 816 F.3d 910, 919 (7th Cir. 2016) ("Perhaps most damningly, [the plaintiff's] employers adduced evidence showing that he had failed to meet their legitimate expectations, thereby rebutting any presumption that their actions were taken in retaliation for [his protected conduct].").

Fourth, Jones claims that he was harassed due to his disability. Doc. 91 at 3. The Seventh Circuit "has not recognized explicitly an ADA claim based on hostile environment or harassment." *Silk v. City of Chicago*, 194 F.3d 788, 803 (7th Cir. 1999); *see also Holyfield-Cooper v. Bd. of Educ.*, 604 F. App'x 504, 508 (7th Cir. 2015); *Lloyd v. Swifty Transp., Inc.*, 552

F.3d 594, 603 (7th Cir. 2009) ("We have not decided whether allowing a hostile work environment is actionable under the ADA."); *Mannie v. Potter*, 394 F.3d 977, 982 (7th Cir. 2005) ("[W]e have not yet decided whether a claim for hostile work environment is cognizable under the ADA or the Rehabilitation Act … ."). Nonetheless, courts in this circuit "have assumed the existence of such claims where resolution of the issue has not been necessary," and "have further assumed that the standards for proving such a claim would mirror those … established for claims of hostile work environment under Title VII." *Mannie*, 394 F.3d at 982. "Surviving summary judgment on a hostile work environment claim requires sufficient evidence demonstrating (1) the work environment was both objectively and subjectively offensive; (2) the harassment was based on membership in a protected class or in retaliation for protected behavior; (3) the conduct was severe or pervasive; and (4) there is a basis for employer liability." *Boss*, 816 F.3d at 920.

Jones's harassment claim fails because, on this record, no reasonable juror could connect the alleged harassment to his disability. Doc. 125 at 7. Although Jones's opposition papers and complaint *describe* threats and harsh comments related to his accommodation request, Doc. 91 at 3, Doc. 130 at 1-2, no *evidence* in the summary judgment record indicates that these comments or any other disparaging remarks were made. The record does contain evidence of two episodes that Jones characterizes as harassing: when Wilson Gordon touched Jones with her body while handing papers to another employee, and when Jones was assigned to process 906 forms instead of opening cases. Doc. 126 at ¶¶ 38-40. But Jones admitted at his deposition that he does not know why his supervisors harassed him, *id*. at ¶ 41, and there is no other evidence of record from which a jury could infer that Jones's treatment was related to his disability. *See Holyfield-Cooper*, 604 F. App'x at 508 ("Even if we assume that she could bring a hostile work

14

environment claim under the ADA, [the plaintiff] did not offer evidence that hostility toward her disability motivated the disciplinary actions taken against her.") (citations omitted); *cf. Orton-Bell v. Indiana*, 759 F.3d 768, 775 (7th Cir. 2014) ("[The plaintiff's] supervisors' insensitive and inattentive responses were callous mismanagement; but absent evidence that this inaction was based on her [protected characteristic], it did not violate Title VII."); *Jajeh v. Cnty. of Cook*, 678 F.3d 560, 569 (7th Cir. 2012) ("Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at discrimination because of [a protected characteristic].") (internal quotation marks, citations, and brackets omitted) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)); *Patton v. Indianapolis Pub. Sch. Bd.*, 276 F.3d 334, 339 (7th Cir. 2002) ("[The plaintiff] has presented no evidence to show that [the alleged harassers'] treatment of her was based on her [protected characteristics]—she argues instead that the 'abusive conduct was purely personal.' This is fatal to her [hostile work environment] claim."). It follows that the harassment claim cannot proceed to trial.

## Conclusion

For the foregoing reasons, DCFS's summary judgment motion is granted. With all claims having been resolved, judgment will be entered against Jones and in favor of DCFS.

November 2, 2018

United States District Judge